[Cite as *State v. Sizemore*, 2019-Ohio-4400.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-01-006 |
| - vs - | : | O P I N I O N<br>10/28/2019 |
| | : | |
| WINTON B. SIZEMORE, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR34236


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Kidd & Urling LLC, Thomas W. Kidd, Jr., James P. Urling, 8913 Cincinnati-Dayton Road, West Chester, Ohio 45069, for appellant


**HENDRICKSON, P.J.**

{¶ 1} Appellant, Winton B. Sizemore, appeals from his conviction in the Warren County Court of Common Pleas for felonious assault with a deadly weapon, domestic violence, aggravated menacing, and using weapons while intoxicated. For the reasons set forth below, we affirm appellant's conviction.

{¶ 2} In May, 2018, appellant was indicted on one count of felonious assault with a deadly weapon in violation of R.C. 2903.11(A)(2), a felony of the second degree, with an accompanying firearm specification under R.C. 2941.145(A). He was also indicted on one count of domestic violence in violation of R.C. 2919.25(A), one count of aggravated menacing in violation of R.C. 2903.21(A), and one count of using weapons while intoxicated in violation of R.C. 2923.15(A), all misdemeanors of the first degree. The charges arose out of an incident that occurred between appellant and his former wife, Ashley Logeman, on November 15, 2017 at their home in Franklin Township, Warren County, Ohio. It was alleged that appellant, after consuming alcohol and prescription medicine, got into an argument with Logeman, and he shoved her down. He subsequently procured a firearm, threatened to shoot Logeman, and fired a bullet in her direction. The bullet struck the couple's bedroom wall less than a foot from where Logeman was standing.

{¶ 3} Appellant pled not guilty to the charges and a jury trial commenced in December 2018. At trial, the state presented testimony from Logeman and from Warren County Sheriff's Deputy Steven Ritchie. Logeman testified that in November 2017, she and appellant were married and were renting a home in Franklin Township. The two were both home on November 15, 2017. Appellant, who "religiously" took prescription pain medication for a back injury, started drinking wine in the early afternoon. Although she did not know exactly how much alcohol appellant had to drink that day, Logeman knew it was more than one bottle of wine. Logeman was also drinking, but "not nearly as heavily as [appellant] was [drinking]." Logeman could tell appellant was "feeling the effects of the wine."

{¶ 4} Logeman testified appellant fell asleep on the couch around 7:00 p.m. When he woke up about an hour and half later, he had to use the restroom. Rather than using a nearby toilet, appellant urinated in a decorative pumpkin. Logeman yelled at appellant for his actions and the two got into an argument. The argument continued when appellant went into

the kitchen to wash the pumpkin. Appellant became physical with Logeman, shoving her to the ground by pushing on her shoulders. Logeman landed painfully on her elbow and her glasses were knocked off her face. Logeman testified she was scared during this event and did not fight back.

{¶ 5} Appellant left the kitchen and went into the master bedroom. Logeman went into another room to collect her phone. She decided she would sleep on the couch and went to the master bedroom to collect some pillows. Upon entering the bedroom, Logeman walked towards her side of the bed. As she did, she noticed that appellant was "crouched down" on the other side of the bed, approximately seven feet away from her, holding a gun that was pointed at her. Logeman recognized the gun as a Glock 43, 9 mm semi-automatic pistol. Logeman testified that this was one of many guns appellant owned and kept in the house.

{¶ 6} Appellant racked a bullet into the chamber and, with the gun pointed at her, stated, "Don't think I fucking wont. Get the fuck out of here." Logeman testified she was terrified and froze, not knowing what to do. Appellant then shot the gun at her, hitting the wall "less than a foot" from where she was standing. Logeman testified the bullet went through the bedroom wall and into the next room.

{¶ 7} After shooting the gun, appellant shouted at Logeman, "Get out of here." When Logeman begged appellant to stop, he threatened, "Don't think I fucking won't shoot you in the fucking face. Last chance." Logeman left the bedroom and appellant followed behind her. Logeman did not know where the gun was at that time. Appellant eventually stopped arguing with Logeman and went back into the bedroom.

{¶ 8} Logeman testified that the incident was captured on an audio recording. She explained that after appellant woke up from his nap on the couch and was "not acting right," she "knew it was going to be one of those nights" and started an audio recording on her

- 3 -

cellphone. She stated that "[o]ten times [appellant] would tell [her] that he didn't remember anything that was said the night before, so [she] recorded it." She never anticipated that appellant would shoot at her. The recording was admitted into evidence and played for the jury.

{¶ 9} Despite being shot at, Logeman did not leave the house that night or call the police. She explained that she was too "scared of the repercussions" if she did. Logeman testified that when appellant woke up the following morning, he did not recall shooting the gun at her the night before. In the weeks that followed the shooting, Logeman and appellant repaired the bullet hole in the wall with spackle and paint.

{¶ 10} Subsequently, on January 12, 2018, Logeman left appellant and obtained an emergency civil protection order against him. Then, on April 2, 2018, after she "felt strong enough to face [appellant] in court," Logeman spoke to law enforcement. She provided a statement about the November 15, 2017 incident to Deputy Ritchie and gave him the audio recording of the shooting.

{¶ 11} Deputy Ritchie testified that he was one of the officers who served the protection order on appellant at his home in Franklin Township in January 2018. At that time, Deputy Ritchie was directed to a patched bedroom wall by Logeman's mother, who was present to collect some of Logeman's personal belongings. Subsequently, on April 2, 2018, Deputy Ritchie took a statement from Logeman about the November 15, 2017 shooting incident.

{¶ 12} Deputy Ritchie returned to appellant's home with a search warrant on May 16, 2018. He located the patched area of the wall and removed pieces of the drywall and the insulation between the bedroom and living room wall. The insulation had a hole through it that was consistent with a bullet hole.

{¶ 13} Following Deputy Ritchie's testimony, the state rested. Appellant took the stand in his own defense, testifying that large parts of Logeman's testimony were inaccurate. He stated he had been at work all day on November 15, 2017, and did not get home until around 11:00 p.m. He denied drinking that day and claimed that despite normally taking prescription pain medication four times daily, he waited to take his prescribed medicine until he returned home from work. After arriving home, appellant took Dilaudid, a "synthetic morphine," for pain management and Amitriptyline, a medication that helped him sleep. He then took a shower and ate before falling asleep on the couch. Logeman woke him up and told him to go to sleep in the bedroom, which he did.

{¶ 14} Appellant testified the next thing he remembered was "standing downstairs in the living room * * * [with Logeman] yelling at [him]" because he was "urinating in the pumpkin bowl." He testified he started crying, cleaned out the bowl, apologized to Logeman, and went back to the master bedroom feeling like he "didn't want to continue to live [his] life like this." Appellant stated he intended to take his own life and when Logeman walked into the bedroom, he had a gun under his chin. Appellant admitted yelling at Logeman to get out of the room and firing the gun, but he claimed his actions were done to make Logeman understand that he had a loaded gun in his hand and wanted her to leave the room. He denied that he aimed the gun at Logeman or shot at her, claiming Logeman was six or seven feet away from where the bullet struck the wall. Furthermore, he claimed that after shooting the gun, when he threatened Logeman by stating, "[d]on't think I fucking won't shoot you in the fucking face. Last chance," he was only making the threat to get Logeman out of the room. He denied that he intended to really shoot her.

{¶ 15} After Logeman left the bedroom, appellant stated he went to sleep. Appellant claims that he woke up the next morning and did not remember the events that transpired the night before. He only learned about what had happened after speaking to Logeman. After

learning about his actions, appellant claimed he collected his guns and gave them to his uncle to sell.

{¶ 16} Following appellant's testimony, the defense rested. The matter was submitted to the jury, who returned guilty verdicts on all counts. Appellant was subsequently sentenced to an aggregate prison term of seven years, of which three years were mandatory.

{¶ 17} Appellant appealed, raising two assignments of error for review.

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN [APPELLANT'S] CONVICTIONS.

{¶ 20} In his first assignment of error, appellant contends his convictions for felonious assault, aggravated menacing, and using a weapon while intoxicated were against the manifest weight of the evidence. He does not challenge his conviction for domestic violence.

{¶ 21} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing a manifest weight challenge, an appellate court "must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Hilton*, 12th Dist. Butler CA2015-03-064, 2015-Ohio-5198, ¶ 18. Thus, an appellate court will overturn a conviction due to the manifest weight of the evidence

"only in the exceptional case in which the evidence weighs heavily against the conviction." *Graham* at ¶ 66, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

## Using Weapons While Intoxicated

{¶ 22} Appellant was convicted of using weapons while intoxicated in violation of R.C. 2923.15(A), which provides that "[n]o person, while under the influence of alcohol or any drug of abuse, shall carry or use any firearm or dangerous ordnance." A "drug of abuse" includes any controlled substances, any harmful intoxicants, and any dangerous drugs as defined by R.C. 4729.01. *See* R.C. 3719.011(A).

{¶ 23} After reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find that the jury did not lose its way and that appellant's conviction for using weapons while intoxicated is not against the manifest weight of the evidence. Logeman testified that appellant began drinking wine in the "early afternoon" on November 15, 2017 and he "religiously" took his prescription pain medication four times daily. Logeman observed appellant drink more than one bottle of wine. She testified appellant was "feeling the effects" of the alcohol, as he was slurring his words and urinated in a decorative pumpkin rather than in a toilet. After drinking wine and taking his prescription pain medication, appellant went into the master bedroom, grabbed one of his guns, and fired the firearm at Logeman.

{¶ 24} Appellant's trial testimony disputed that he consumed any alcohol on November 15, 2017. He claimed that rather than drinking all day, he had been at work. He now argues that even if he had been drinking, "whatever unknown quantity of alcohol [he had] alleged[ly] * * * consumed" would have been metabolized by his body as he had fallen sleep for more than two hours before the shooting incident occurred.

{¶ 25} "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution

testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. When there is a conflict in the testimony of witnesses, it is for the trier of fact to determine the weight and credibility to be given to such evidence. *State v. Marcum*, 12th Dist. Butler No. CA2017-05-057, 2018-Ohio-1009, ¶ 31, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury was entitled to rely on Logeman's testimony that appellant had been drinking all day and was under the influence of alcohol at the time he possessed and shot the firearm in the master bedroom. Moreover, in considering whether appellant was under the influence at the time he possessed and used the firearm, the court was entitled to consider appellant's own testimony that he had taken Dilaudid and Amitriptyline, drugs of abuse, before urinating in a pumpkin bowl and shooting a firearm inside the master bedroom. Appellant's conviction for using weapons while intoxicated is therefore not against the manifest weight of the evidence.

**Felonious Assault and Aggravated Menacing**

{¶ 26} The manifest weight of the evidence also supports appellant's convictions for felonious assault and aggravated menacing. Pursuant to R.C. 2903.11(A)(2), an individual is guilty of felonious assault if that person "knowingly * * * [c]ause[s] or attempt[s] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." A person is guilty of aggravated menacing if the person "knowingly cause[s] another to believe that the offender will cause serious physical harm to the person or property of the other person * * *." R.C. 2903.21(A). A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 27} A criminal attempt occurs when a defendant "purposely does or omits to do something which is an act or omission constituting a substantial step in a course of conduct planned to culminate in the commission of a crime. To constitute a substantial step, the

- 8 -

conduct must be strongly corroborative of the actor's criminal purpose." *State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus, construing R.C. 2923.02(A), *vacated on other grounds*, 438 U.S. 910, 98 S.Ct. 3133 (1978). "The act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *State v. Brooks*, 44 Ohio St.3d 185 (1989), syllabus. However, a finder of fact may infer from a defendant's actions and the surrounding circumstances that the defendant possessed an intent to cause serious physical harm to another. *State v. Seiber*, 56 Ohio St.3d 4, 15 (1990). *See also State v. Roark*, 2nd Dist. Montgomery No. 23559, 2010-Ohio-2841, ¶ 30.

**{¶ 28}** Appellant argues his testimony established that the firearm was not aimed at Logeman at the time it was discharged and that it was not discharged in an attempt to cause Logeman physical harm. Rather, appellant argues, the gun was only fired in an effort to convince Logeman to leave the room. The state, however, presented evidence that allowed the jury to find otherwise. Logeman's testimony and the audio recording demonstrated appellant threatened Logeman, telling her "Don't think I fucking wont" while aiming the gun at her. Logeman testified she was terrified when appellant pointed the 9-millimeter pistol at her. Appellant shot the gun at Logeman, barely missing her and hitting the wall "less than a foot" from where she was standing. Appellant then threatened Logeman again, stating "Don't think I fucking won't shoot you in the fucking face. Last chance."

**{¶ 29}** As Deputy Ritchie testified, firearms are capable of causing serious physical injury or death. Appellant's conduct in pointing a gun at Logeman and firing the weapon at her was a substantial step in a sequence of events that, if successful would have caused Logeman physical harm. The jury was entitled to credit Logeman's version of events and conclude that appellant's discharge of the weapon towards Logeman was an attempt to cause physical harm to another by means of a deadly weapon and that appellant's actions

caused Logeman to believe that he would cause her serious physical harm. Appellant's convictions for felonious assault and aggravated menacing are therefore not against the manifest weight of the evidence.

{¶ 30} Accordingly, for the reasons stated above, we find that the jury did not lose its way and create such a manifest miscarriage of justice that appellant's convictions for using weapons while intoxicated, felonious assault, and aggravated menacing must be reversed. Appellant's convictions are not against the manifest weight of the evidence. His first assignment of error is, therefore, overruled.

{¶ 31} Assignment of Error No. 2:

{¶ 32} THE COURT COMMITTED REVERSIBLE ERROR WHEN IT PROHIBITED THE INTRODUCTION OF EVIDENCE THAT DIRECTLY REFLECTED UPON A WITNESSES [SIC] CREDIBILITY.

{¶ 33} In his second assignment of error, appellant argues the trial court erred when it "sustained the State's objection to [the] introduction of evidence regarding the alleged victim's illicit use of drugs on the date of the alleged offense." At trial, defense counsel sought to introduce a text message sent by Logeman to appellant on November 15, 2017. In the text message, Logeman stated, "Okay, love, I labest [sic] you. Let me know when you're heading out. If you have any spare, I could definitely use a happy. My back is killing me." Defense counsel argued the message was relevant as he believed Logeman was "going to testify that she was not taking any of his pills that night and that she never does and that this would be an indication that yes, she was asking for them."

{¶ 34} The text message was ultimately excluded from evidence by the trial court. Appellant now argues that had he been permitted to testify about the text message, he "would have explained that th[e] message was a request from Ms. Logeman for one of [his] opioid-based pain killers for which he had a prescription." Appellant contends such evidence

- 10 -

was extremely probative and relevant as it "reflects directly on the victim's credibility, state of mind, and cognitive state on the date * * * the alleged offense occurred."

{¶ 35} "A trial court has broad discretion in the admission and exclusion of evidence and unless it clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. An abuse-of-discretion standard of review is a deferential review. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

{¶ 36} "[T]he credibility of testimony can be attacked through evidence of a witness's intoxication at the time of the matter about which the witness seeks to testify.'" *State v. Gaffin*, 4th Dist. Adams No. 17CA1057, 2019-Ohio-291, ¶ 57, quoting *Kenney v. Fealko*, 75 Ohio App.3d 47, 51 (11th Dist.1991). Evid.R. 616(B) specifically provides that "[a] defect of capacity, ability, or opportunity to observe, remember, or relate may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." Furthermore, Evid.R. 616(C) allows facts contradicting a witness's testimony to be introduced into evidence to impeach a witness's testimony. However, "[i]f offered for the sole purpose of impeaching a witness's testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is * * * (1) [p]ermitted by Evid.R. 608(A), 609, 613, 616(A), 616(B), or 706; [or] (2) [p]ermitted by the common law of impeachment and not in conflict with the Rules of Evidence." Evid.R. 616(C).

{¶ 37} In the present case, Logeman admitted that she had been drinking on the day of the incident. She stated she was not drinking "nearly as heavily as [appellant] was" drinking, but admitted she had "a little bit of a buzz throughout the day." Although the issue

of Logeman's memory in light of her drinking was discussed at trial, the issue of whether Logeman had ingested any medication on the date of the incident was not raised during her testimony. Defense counsel did not ask Logeman on cross-examination whether she had taken any medication on November 15, 2017, and if so, whether the medication came from appellant. Although defense counsel indicated he anticipated Logeman would deny that she took medication she obtained from appellant that night or any other night, he never sought to elicit such testimony from Logeman. The text message, therefore, was not admissible under Evid.R. 616(C) to impeach Logeman's testimony. Furthermore, as the text message does not establish that a pill was given to Logeman on November 15, 2017 or that Logeman ingested the pill, the text message was not relevant and was inadmissible as a means of attacking Logeman's memory or her credibility under Evid.R. 616(B).

{¶ 38} Accordingly, we conclude that the exclusion of the text message from evidence was not an abuse of the trial court's discretion and that appellant was not prevented from having a fair trial or presenting a meaningful defense. Appellant's second assignment of error is overruled.

{¶ 39} Judgement affirmed.

S. POWELL and RINGLAND, JJ., concur.