[Cite as *State v. Worship*, 2022-Ohio-52.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-09-055 |
| | : | O P I N I O N |
| - vs - | | 1/10/2022 |
| | : | |
| STEVEN DEMETRIUS WORSHIP, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CR36147


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Traci M. Carr, for appellant.


**HENDRICKSON, J.**

{¶1}   Appellant, Steven Worship, appeals his conviction in the Warren County Court of Common Pleas for felonious assault.

{¶2}   In April 2018, appellant and J.S. met each other through an online dating platform.  They began communicating regularly through the website's private messaging function, but quickly exchanged phone numbers and began texting and calling one another.

{¶3} From the beginning of their relationship, appellant and J.S. had regular and ongoing conversations about sexual health. J.S. shared her sexual health records with appellant, and repeatedly requested he do the same. Appellant equivocated, citing a recent hospitalization for diverticulitis where he stated he was tested "for everything" and "didn't have anything." When J.S. again requested that appellant test for sexually transmitted infections ("STIs"), he told her that he had gone to a hospital in Dayton, had tests done, and "had a clean bill of health," but again produced no documentation to confirm this.

{¶4} In May 2018, appellant and J.S. began a sexual relationship. While they used a condom in their initial encounter, both testified that the overwhelming majority of their sexual encounters occurred without protection. Between June and July 2018, appellant moved in with J.S., during which time they had daily sexual encounters. After he moved out, they ended their relationship for a time, but resumed it periodically for the next several months.

{¶5} In January 2019, J.S. reached out to appellant to inform him that she had recently tested positive for chlamydia and bacterial vaginosis. She testified that she had two additional sexual partners during that time but had seen the medical records of each, so she determined that appellant was the source of the STIs. In an email exchange on January 21, 2019, appellant denied he was the source of the STIs and again asserted that he had a "clean bill of health." In spite of the exchange, appellant and J.S. continued to have a sexual relationship.

{¶6} In the early morning hours of June 23, 2019, appellant arrived unannounced at J.S.'s house. She invited him in to talk and the two eventually engaged in sexual intercourse. Following this encounter, J.S. went to appellant's car to retrieve his lighter so she could smoke. Once in the vehicle, she discovered a bottle of medication labeled Biktarvy, prescribed to appellant on March 29, 2019. Unfamiliar with the medication, J.S.

conducted an internet search and discovered that it is used to treat HIV. J.S. confronted appellant about the medication, asking how long he had known that he was HIV positive. Appellant replied by asking how she found out. She told him that she had found his medication, and he responded that he "had been testing negative." Appellant then left her residence.

{¶7} Believing that she had been sexually assaulted, J.S. completed a physical examination with a Sexual Assault Nurse Examiner ("SANE") and contacted law enforcement. J.S. met with Detective Kevin Barton, of the Clearcreek Township Police Department, and told him what had happened. Detective Barton took her statement, gathered evidence, and presented the results of his investigation to the Warren County Prosecutor's Office. On November 25, 2019, a grand jury indicted appellant for one count of felonious assault.

{¶8} At a bench trial, J.S. testified that she only discovered that appellant had HIV after finding his medications in June 2019. Appellant testified that following J.S.'s January 2019 accusation that he had given her chlamydia, he received testing for STIs at Equitas Health. Appellant stated that he told J.S. that he had HIV as soon as he received the diagnosis. Specifically, he recalled a phone conversation where he told her "maybe you shouldn't be sleeping with a lot of people * * * because I may have, you know, HIV." The trial court found appellant guilty of felonious assault in violation of R.C. 2903.11(B)(1), and sentenced him to prison for two to three years. Appellant now appeals, raising the following assignments of error:

{¶9} Assignment of Error No. 1:

{¶10} THE TRIAL COURT ERRED WHEN IT ADMITTED UNAUTHENTICATED MEDICAL RECORDS.

{¶11} In appellant's first assignment of error, he argues that the trial court erred in

- 3 -

its admission of his medical records.

{¶12} "'A trial court has broad discretion in the admission and exclusion of evidence and unless it clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court.'" *State v. Sizemore*, 12th Dist. Warren No. CA2019-01-006, 2019-Ohio-4400, ¶ 35, quoting *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. "An abuse of discretion is more than an error of law or judgment." *State v. Jackson*, 12th Dist. Madison No. CA2019-03-006, 2020-Ohio-2677, ¶ 43. Rather, it suggests that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Gibson*, 12th Dist. Butler No. CA2016-06-107, 2017-Ohio-877, ¶ 21. "An abuse-of-discretion standard of review is a deferential review." *State v. Green*, 12th Dist. Clermont No. CA2019-07-061, 2020-Ohio-1552, ¶ 27.

{¶13} Appellant argues that his medical records were not properly authenticated and were consequently admitted in error. R.C. 2317.422 "provides a simplified means of authenticating hospital records which eliminates the necessity for the in-court testimony of the custodian." *State v. Humphries*, 79 Ohio App.3d 589, 595 (12th Dist. 1992). It provides that

> the records, or copies or photographs of the records, of a hospital * * * in lieu of the testimony in open court of their custodian, person who made them, or person under whose supervision they were made, may be qualified as authentic evidence if any such person endorses thereon the person's verified certification identifying such records, giving the mode and time of their preparation, and stating that they were prepared in the usual course of the business of the institution.

R.C. 2317.422(A).

{¶14} On May 19, 2020, pursuant to the state's motion, the trial court ordered that Equitas Health provide the trial court with "properly certified medical records in accordance with Revised Code § 2317.422 for Steven Worship * * * for the dates of treatment: April 1,

- 4 -

2018 through June 30, 2019." On June 10, 2020, Equitas responded to the order and provided appellant's medical records to the court.

{¶15} The face sheet for the Equitas records identifies the records as "Confidential Records" and as being from the Equitas's "Medical Records Manager." Contrary to the formalities required by R.C. 2317.422(A) for the authentication of hospital records, however, there is no verified certification which identifies the records, gives the mode and time of their preparation, and states that they were prepared in the usual course of the business of Equitas. Appellant's medical records consequently did not satisfy the requisites of R.C. 2317.422(A) for authentication.

{¶16} The state argues that the trial court did not err by admitting the medical records because appellant did not specify that his objection to the medical records was based upon R.C. 2317.422. Evid.R. 103(A)(1) provides that

> [e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

{¶17} In this case, the state introduced appellant's medical records during the testimony of the investigating officer, Detective Kevin Barton. Appellant's trial counsel promptly objected. Appellant's objection to the medical records was not articulate and did not specifically cite R.C. 2317.422. However, counsel was clear that the trial court's order that the medical records be produced did not render the records admissible evidence. Although counsel's objection did not cite R.C. 2317.422, it was apparent from the context that counsel was objecting to the admission of the records because there was no certification and no authenticating witness.

{¶18} Because appellant timely objected to the admission of the medical records and because the records were not properly authenticated, the trial court erred in admitting

the records into evidence. Appellant "has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error." *State v. Brown*, 65 Ohio St.3d 483, 485, 1992-Ohio-61. We therefore address whether the error was reversible or harmless.

{¶19} "Not every error requires that a conviction be vacated or a new trial granted." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 24. Errors in evidentiary rulings are subject to review under the harmless error standard. *State v. Echavarria*, 12th Dist. Butler No. CA2003-11-300, 2004-Ohio-7044, ¶ 20; *see* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). The harmless-error rule "was created in essence to forgive technical mistakes," and does so by inquiring whether the rights affected were "substantial," and if so, whether the accused was prejudiced thereby. *Morris* at ¶ 24, citing Crim.R. 52(A) and R.C. 2945.83(D).

{¶20} "When determining whether erroneously admitted evidence affected a defendant's substantial rights as to require a new trial or whether such an admission was harmless under Crim.R. 52(A), a reviewing court must make three determinations." *In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 34. The Supreme Court has enumerated these:

> First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

(Citations omitted.) *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, ¶ 37.

{¶21} In this case, the erroneous admission of appellant's unauthenticated medical records demonstrated appellant's knowledge that he was HIV positive. This evidence proved an element of felonious assault under R.C. 2903.11(B)(1), as the records show that appellant was informed of his diagnosis in 2001, well before his relationship with J.S. In the

absence of additional evidence, the trial court's admission of the medical records would be prejudicial to appellant. However, there was ample additional evidence to show that appellant knew about his diagnosis and failed to fully disclose that he was HIV positive to J.S., without use of the medical records.

{¶22} J.S.'s testimony independently established that appellant was aware he was HIV positive prior to engaging in sex with her on June 23, 2019. Specifically, after J.S. found appellant's Biktarvy prescription and she confronted him, appellant inquired how she had found out. She told him she had discovered his Biktarvy prescription and appellant stated that he had been testing negative for HIV. This statement, i.e., appellant inquiring how J.S. "found out," constituted an admission on his part. Further, the prescription was issued in March 2019, which indicates he knew at that time. J.S.'s testimony concerning her confrontation with appellant on June 23, 2019, and his statements indicating his awareness that he was HIV positive, establish that appellant had sex with J.S. knowing he was HIV positive on that date. Because the remaining evidence establishes appellant's guilt beyond a reasonable doubt, the trial court's error in admitting appellant's unauthenticated medical records was harmless. Accordingly, appellant's first assignment of error is overruled.

{¶23} Assignment of Error No. 2:

{¶24} THE TRIAL COURT ERRED WHEN IT ADMITTED APPELLANT'S MEDICAL RECORDS, OVER OBJECTION, THAT VIOLATED HIS DOCTOR/PATIENT PRIVILEGE.

{¶25} Appellant next argues that the trial court erred in admitting his medical records because the admission violated his physician-patient privilege. Having already determined that the admission of appellant's unauthenticated medical records was erroneous, we pause here to note that even had the medical records been properly authenticated, physician-patient privilege would not preclude their admission.

{¶26} "The physician-patient privilege prevents a physician from testifying concerning communication made to the physician by a patient in that relation or the physician's advice to a patient." *State v. Myers*, 12th Dist. Clinton Nos. CA2014-02-002 and CA2014-02-004, 2015-Ohio-160, ¶ 34, citing R.C. 2317.02(B)(1). Under the statute, "[a] 'communication' may include, but is not limited to, any medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis." R.C. 2317.02 (B)(5)(a).

{¶27} The physician-patient privilege is not absolute, there being numerous statutory exceptions to the privilege. *State v. Richardson*, 12th Dist. Warren Nos. CA2018-04-043 and CA2018-04-044, 2018-Ohio-4254, ¶ 17. One such exception is found in R.C. 3701.243(B)(1)(h). *See State v. Gonzalez*, 1st Dist. Hamilton No. C-020384, 2003-Ohio-4421, ¶ 89. This statute provides that

> the results of an HIV test or the identity of an individual on whom an HIV test is performed or who is diagnosed as having AIDS or an AIDS-related condition may be disclosed * * * [t]o law enforcement authorities pursuant to a search warrant or a subpoena issued by or at the request of * * * a prosecuting attorney * * * in connection with a criminal investigation or prosecution.

R.C. 3701.243(C)(1) and (2) permit a court to issue an order granting a government agency the authority to disclose HIV test records on a showing of compelling need. R.C. 3701.243 further provides that "[n]othing in this section prohibits the introduction of evidence concerning an HIV test of a specific individual in a criminal proceeding."

{¶28} In this case, the state sought disclosure of appellant's HIV test records in connection with its prosecution of appellant for felonious assault. The state demonstrated a compelling need for the records, which would satisfy one of the elements of the charged offense. *See* R.C. 2903.11(B)(1). As such, the physician-patient privilege did not apply,

and the trial court properly issued its order permitting disclosure of the records. Although Equitas failed to properly authenticate the records, rendering their admission erroneous, physician-patient privilege had no bearing on whether the records should have been admitted. Accordingly, appellant's second assignment of error is overruled.

{¶29} Assignment of Error No. 3:

{¶30} THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT THE CONVICTION, AND THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PROPERLY BEFORE THE COURT.

{¶31} In his final assignment of error, appellant challenges his conviction on both sufficiency of the evidence and manifest weight grounds.

{¶32} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Moore*, 12th Dist. Fayette No. CA2020-09-016, 2021-Ohio-1856, ¶ 12. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Roberts*, 12th Dist. Warren No. CA2020-12-089, 2021-Ohio-3073, ¶ 12. The relevant inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Terry*, 12th Dist. Warren No. CA2021-04-029, 2021-Ohio-4043, ¶ 9.

{¶33} "Unlike a challenge to the sufficiency of the evidence, a manifest weight of the evidence challenge examines the 'inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.'" *Moore* at ¶ 13, quoting *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing

court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Fester*, 12th Dist. Clermont No. CA2019-05-043, 2021-Ohio-410, ¶ 55.

{¶34} "When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt." *State v. Tranovich*, 12th Dist. Butler No. CA2008-09-242, 2009-Ohio-2338, ¶ 7. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Ostermeyer*, 12th Dist. Fayette No. CA2021-01-002, 2021-Ohio-4116, ¶ 35. A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Jividen*, 12th Dist. Warren No. CA2020-10-067, 2021-Ohio-2720, ¶ 10.

{¶35} R.C. 2903.11(B)(1) states that "[n]o person, with knowledge that the person has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome, shall knowingly * * * [e]ngage in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct." Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another." R.C. 2907.01(A).

{¶36} It is undisputed that appellant and J.S. engaged in sexual conduct between May 2018 and June 2019. It is likewise undisputed that appellant knew that he had HIV by

January 2019 at the latest, and that he engaged in sexual contact with J.S. after receiving that diagnosis. What is in dispute is whether appellant disclosed his HIV positive status to J.S. prior to her finding his medication on June 23, 2019. Appellant asserts that he told J.S. as soon as he found out, and discounts J.S.'s testimony to the contrary.

{¶37} "'[T]he decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.'" *State v. Cephas*, 12th Dist. Butler No. CA2021-05-051, 2021-Ohio-4356, ¶ 15, quoting *State v. Goodwin*, 12th Dist. Butler No. CA2016-05-099, 2017-Ohio-2712, ¶ 34. "[I]t is well-established that determinations regarding witness credibility, conflicting testimony, and the weight to be given such evidence are primarily for the trier of fact." *State v. K.W.*, 12th Dist. Warren No. CA2016-01-004, 2016-Ohio-7365, ¶ 26. "The trial court, as the trier of fact, is free to believe all, part, or none of the testimony of any witness who appears before it." *Cephas* at ¶ 13.

{¶38} Appellant points to the conflict between his testimony and J.S.'s testimony to suggest that the latter was unreliable. However, "when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17; *see also State v. Jackson*, 12th Dist. Butler No. CA2001-10-239, 2002-Ohio-4705, ¶ 48 ("A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact"). "'In a bench trial, the trial court acts as the factfinder and determines both the credibility of the witnesses and the weight of the evidence.'" *Hensley*, 2021-Ohio-3702, at ¶ 29, quoting *State v. Lowry*, 12th Dist. Warren Nos. CA2019-07-070 and CA2019-07-071, 2020-Ohio-1554, ¶ 19. Here, the trial court, as factfinder, determined that J.S. was credible, and appellant was not.

{¶39} In finding appellant guilty of felonious assault, the trial court was entitled to discredit appellant's testimony and believe J.S.'s testimony. *Cephas* at ¶ 15. In making its decision which witnesses to believe and which to disbelieve, the trial court did not lose its way or create a manifest miscarriage of justice. After reviewing the record, weighing inferences, and examining the credibility of the witnesses, we find that appellant's conviction for felonious assault is not against the manifest weight of the evidence. We will not reverse appellant's conviction where, as here, we find that the trial court could reasonably conclude from substantial evidence that the state proved the offense beyond a reasonable doubt. *Tranovich*, 2009-Ohio-2338, at ¶ 7. As such, appellant's final assignment of error is without merit and therefore overruled.

{¶40} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.