[Cite as *State v. Travis*, 2022-Ohio-1233.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 110514 |
| v. | : | |
| SIERRA TRAVIS, | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 14, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-653478-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jennifer King, Assistant Prosecuting Attorney, *for appellee.*

Brian R. McGraw, *for appellant.*

JAMES A. BROGAN, J.:

{¶ 1} Defendant-appellant Sierra Travis ("Travis") appeals from her convictions for murder and felonious assault. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} This case stems from an incident that occurred on September 25, 2020. Travis, who was 23 years old at the time of this incident, met the victim, Hiriam Frazier ("Frazier"), who was 22 years old at the time of the incident, through an online dating app, and the two went on their first date in August 2019. According to Travis, Frazier was working at a furniture store when they met. Around January 2020, Frazier purchased a gun that he used at a new job in security. At the end of August 2020, Travis purchased her own gun. Around that time, Travis moved out of her parents' house. Frazier, who had been staying with his friend Diamond Webb ("Webb") and her family, also moved out. Travis and Frazier began staying together.

{¶ 3} On the evening of September 25, 2020, Travis picked up Frazier from his job as a security officer at a bar on the east side of Cleveland, Ohio. Travis was driving a Jeep Compass, a rental car that the couple shared. They drove to Webb's home at Shaker Park Gardens apartments in Warrensville Heights, Ohio. Webb lived at the apartment with her husband and daughter, and Frazier had stayed with them until several weeks prior. That night, Frazier and Travis went to Webb's home because Webb had contacted Frazier to let him know that a package for him had been delivered.

{¶ 4} Travis and Frazier arrived at Webb's apartment around 8:30 p.m. and security footage from the apartment complex shows the two of them approaching the apartment, greeting people who were sitting outside of the apartment door, and entering the apartment through a patio door. Several minutes later, the video shows

Travis leaving the apartment through the patio door, followed by Frazier leaving the apartment through a different door. Travis and Webb both testified that the couple was inside the apartment for no more than a few minutes. Webb testified that Travis and Frazier were both acting normal, and were being "playful."

{¶ 5} Security footage from the parking lot on the other side of the apartment building shows the lights on the Jeep turning on as Travis unlocked the car with her key fob. Frazier and Travis both approached the Jeep. Travis went to the rear passenger door, opened the door, and retrieved her gun from the backseat of the car. Frazier went to the driver's side of the car. While they were on opposite sides of the car, Travis fired a "warning shot" into the air, away from the parking lot; the security footage shows Travis raising her arm followed by a muzzle flash. Travis then walked around the front of the car to where Frazier is standing on the driver side. Frazier can be seen raising his arms up, and a man's voice is audible on the video saying "go head on." Frazier stepped toward Travis with his arms raised, and then took a step away from her with his arms still raised. The footage then shows Travis raising the gun, aiming at Frazier, and firing one shot in his chest.

{¶ 6} Frazier fell to the ground screaming, and Travis can be seen bending down before opening the rear driver side door of the car. Frazier then began to scream for Webb and walk back toward the apartment building. Shortly thereafter, the footage shows Travis walking back toward the car and saying into her phone "my boyfriend's been shot." Travis was followed into the parking lot by Webb.

{¶ 7} Police and EMS responded to the scene. The responding officers asked Frazier and Travis who shot Frazier; Frazier was in shock and did not respond coherently, and Travis responded that she did not know. In the process of securing the scene, one of the responding officers observed two guns in the Jeep. Several minutes later, when speaking with another responding officer, Travis admitted that she had shot Frazier. Officers ultimately recovered two guns — Travis's and Frazier's — from the Jeep, as well as one spent shell casing, four magazines, and Travis's gun case.

{¶ 8} EMS put Frazier into an ambulance and transported him to MetroHealth; Frazier died en route to the hospital. According to his autopsy, the bullet lacerated a blood vessel and passed through the upper portion of Frazier's left lung, causing extensive bleeding, difficulty breathing, and a fractured rib. Frazier's cause of death was a gunshot wound to the chest, and his autopsy listed the manner of death as homicide.

{¶ 9} As a result of this incident, on October 21, 2020, a Cuyahoga County Grand Jury indicted Travis on one count of murder in violation of R.C. 2903.02(A); one count of murder in violation of R.C. 2903.02(B); and one count of felonious assault in violation of R.C. 2903.11(A)(1). Each count carried a one-year firearm specification, a three-year firearm specification, and a forfeiture of a weapon specification. Travis pleaded not guilty to these charges. On May 4, 2021, Travis executed a waiver of her right to trial by jury and the case proceeded to a bench trial.

{¶ 10} At trial the state called Webb, responding officers, a responding paramedic, a trace evidence expert, a firearms expert, the forensic pathologist who performed Frazier's autopsy, and Frazier's coworker. The state introduced various exhibits at trial, including the surveillance footage from the apartment and body cam footage from the responding officers. At the conclusion of the state's case, defense counsel made a Crim.R. 29 motion, which the trial court denied.

{¶ 11} Travis called four witnesses and testified on her own behalf. Clarence Hall testified that he was Travis's pastor and believed her to be a well-mannered and responsible person. Mary Logan also knew Travis through her church community and testified that she found Travis to be energetic and respectful. Certito Bethel was the mother of Travis's ex-boyfriend, and she testified that she was familiar with Travis's relationship with Frazier. Specifically, she testified that she thought Frazier was angry and verbally abusive. Travis's father testified that Travis was a kind and benevolent person.

{¶ 12} In her defense, Travis testified that she loved Frazier and he was her best friend. She went on to testify that Frazier had anger issues and sometimes got physical with her. With respect to the date of the incident in this case, Travis testified that she and Frazier were in Webb's apartment for no longer than three minutes. She explained that when they got to the apartment, she was happy, but as they were leaving the apartment, she and Frazier got into a physical altercation. Travis testified that Frazier was wearing his gun in a holster on his right hip. Travis testified that she touched Frazier on the butt, which upset Frazier and prompted him

to punch Travis in the leg. Travis testified that she then smacked Frazier "in retaliation" and told him that she was leaving. Travis testified that when she was exiting the apartment building, she looked behind her and saw that Frazier was chasing after her, and her instinct was to grab her gun from the rear passenger side of the Jeep. Travis explained that she fired a warning shot towards a wooded area and then went around to the driver side of the car where Frazier was. According to Travis, her plan was to get into the car and drive away without Frazier. Travis testified that as she rounded the front of the car, Frazier pulled his gun on her. She asked him to lower his gun and he did not. Travis then testified that she "pulled [her] gun up to him, and he stepped forward, and [their] guns ended up hitting each other," causing her gun to discharge. Travis testified that she did not intend for her gun to go off.

{¶ 13} Travis testified that she initially denied knowing who shot Frazier, and that when she admitted she shot Frazier, she initially told police that she only fired her gun once. Ultimately, Travis testified that she lied to police immediately following the shooting.

{¶ 14} At the close of the defense case, defense counsel renewed its Crim.R. 29 motion. The court again denied this motion. Defense counsel requested an instruction on self-defense, based on Travis's testimony that Frazier pointed his gun at her and stepped forward. Defense counsel also requested an instruction on accident, based on statements Travis made immediately following the shooting. Finally, defense counsel asked for an instruction on reckless homicide. In response

to these requests, the state argued that Travis could not argue theories that were in complete opposition. The court took a brief recess, after which the court stated:

> We did take a short break with regard to self-defense and the law that was placed before me. I am going to hold at this time that Stand Your Ground does not apply and if in the interim I do find any case law to the contrary I will take that into consideration, but at this time I'm going to find that it does not apply. We will start with closing.

Both parties proceeded with their closing arguments.

{¶ 15} On May 7, 2021, the court announced its verdict, making the following statement with respect to self-defense:

> I will start with I don't believe that self-defense applies in this case, but even if it did, the state of Ohio has met their burden and proved beyond a reasonable doubt that the Defendant did not act in self-defense.
>
> The [c]ourt has also decided to give the [d]efendant the benefit of the new law wherein the duty to retreat was abolished, and even with the benefit of the new law, and in turn not considering the possibility of retreat and relying on the evidence presented, the new law does not change the [c]ourt's findings.

With respect to accident, the court stated:

> Furthermore, the [d]efendant asked the [c]ourt to consider accident as part of the instruction. The [c]ourt does not find that the act was unintentional and not reasonably anticipated or foreseen as a natural or probable result of a lawful act.

The court proceeded to find Travis guilty on all counts and specifications.

{¶ 16} On May 12, 2021, the court held a sentencing hearing. The court merged all three counts and sentenced Travis to 15 years to life on the murder, consecutive to three years for the firearm specification, for a total sentence of 18 years to life.

{¶ 17} Travis appeals, presenting three assignments of error for our review:

I. The trial court erred in not considering accident and the relevant jury instructions.

II. The court erred in not considering the lesser offense of reckless homicide (R.C. 2903.041) as manifest weight/sufficiency considerations dictated a verdict on reckless homicide.

III. The court erred in not acquitting Travis of murder on the grounds that she acted in self-defense.

## Legal Analysis

### I. Accident

{¶ 18} In her first assignment of error, Travis argues that the trial court erred in not considering accident and the relevant jury instructions. Travis also argues that the court erred in not explaining its reasoning for rejecting her accident argument.

{¶ 19} In a bench trial, the court is presumed to know and apply the law correctly unless the record affirmatively demonstrates otherwise. *State v. Kilbane*, 8th Dist. Cuyahoga No. 106753, 2019-Ohio-863, ¶ 15, citing *State v. Shropshire*, 8th Dist. Cuyahoga No. 103808, 2016-Ohio-7224, ¶ 37. The instruction for accident, set forth in the general criminal trial instructions of the *Ohio Jury Instructions* states:

1. The defendant denies any purpose to (describe). He denies that he committed an unlawful act and says that the result was accidental.

2. DEFINED. An accidental result is one that occurs unintentionally and without any design or purpose to bring it about. An accident is a mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act.

3. FORESEEABILITY. OJI-CR 417.25.

4. CONCLUSION ON ACCIDENT. If after considering all the evidence, including that on the subject of accident, you are not convinced beyond a reasonable doubt that the defendant had a purpose to (describe), you must return a verdict of not guilty.

*Ohio Jury Instructions*, CR Section 421.01.

{¶ 20} Here, Travis's argument that the trial court failed to consider accident and the corresponding jury instructions is without merit. First, Travis presents no law in support of her assertion that the trial court was required to consider accident jury instructions. Additionally, Travis provides no law in support of her argument that the trial court was somehow required to explain its reasoning. Crim.R. 23(C) only requires the court in a bench trial to make a general finding regarding its verdict. *Cleveland Hts. v. Watson*, 8th Dist. Cuyahoga No. 85344, 2005-Ohio-3595, ¶ 15, citing *State v. Walker*, 26 Ohio App.3d 29, 31, 498 N.E.2d 191 (8th Dist.1985). Moreover, the record reflects that the trial court did in fact consider Travis's defense theory that the shooting of Frazier was an accident. The court referred to the language of the accident jury instruction when it stated that it did "not find that the act was unintentional and not reasonably anticipated or foreseen as a natural or probable result of a lawful act." Therefore, the trial court did not err by not considering accident and the corresponding jury instructions. Travis's first assignment of error is overruled.

## II. Reckless Homicide

{¶ 21} In her second assignment of error, Travis argues that the trial court erred in not considering the lesser included offense of reckless homicide. "In a

bench trial, it is presumed that 'the court considered inferior and lesser-included offenses.'" *State v. Churn*, 8th Dist. Cuyahoga No. 105782, 2018-Ohio-1089, ¶ 13, quoting *State v. Masci*, 8th Dist. Cuyahoga No. 96851, 2012-Ohio-359, ¶ 25; *State v. Perez*, 8th Dist. Cuyahoga No. 91227, 2009-Ohio-959; *State v. Waters*, 8th Dist. Cuyahoga No. 87431, 2006-Ohio-4895, ¶ 11. In this case, Travis requested an instruction on reckless homicide, and the state did not object to this. Although the trial court did not make an explicit statement on the record with respect to the lesser included offense of reckless homicide, we reiterate that it was not required to do so pursuant to Crim.R. 23(C).

{¶ 22} "[A]n instruction on a lesser included offense is warranted if the jury could reasonably conclude that the evidence supported the lesser charge and did not support the greater charge." *State v. Berry*, 8th Dist. Cuyahoga No. 83756, 2004-Ohio-5485, ¶ 48. The trial court here found that the evidence supported the charge of murder. This finding, in light of the presumption that the trial court considered lesser included offenses, supports a conclusion that the trial court did not err in failing to consider the lesser included offense of reckless homicide.

{¶ 23} To the extent that Travis refers to the manifest weight of the evidence and sufficiency of the evidence in her second assignment of error, we note that her brief does not provide any arguments related to these concepts. App.R. 16(A)(7) provides that the appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the

authorities, statutes, and parts of the record on which appellant relies." In the absence of such arguments in accordance with App.R. 16(A)(7), we decline to consider any purported arguments that Travis's convictions were against the manifest weight of the evidence or not supported by sufficient evidence. Travis's second assignment of error is overruled.

## III. Self-Defense

{¶ 24} In Travis's third assignment of error, she argues that the trial court erred in not acquitting her of murder on the grounds that she acted in self-defense. Specifically, Travis argues that she testified that she fired her weapon when she was "confronted" and "advanced upon."

{¶ 25} "Self-defense claims are generally an issue of credibility." *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, ¶ 13. "If evidence presented at trial tends to support the conclusion 'that the defendant used force against another in self-defense or in defense of another, the state must prove beyond a reasonable doubt that the defendant did not use the force in self-defense or defense of another.'" *Id.*, quoting *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49, citing R.C. 2901.05(B)(1).

{¶ 26} As an initial matter, we recognize the contradiction inherent in Travis's arguments at trial and in this appeal. "A defendant claiming self-defense 'concedes that he had the purpose to commit the act, but asserts that he was justified in his actions.'" *State v. Davis*, 8th Dist. Cuyahoga No. 109890, 2021-Ohio-2311, ¶ 38, quoting *State v. Talley*, 8th Dist. Cuyahoga No. 87413, 2006-Ohio-5322, ¶ 45.

Because self-defense presumes an intentional, willful use of force, "'when an individual testifies that they did not intend to cause harm, such testimony prevents the individual from claiming self-defense.'" *Id.*, quoting *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 54. Here, Travis's theory of the case has shifted multiple times, from her statements immediately following the shooting through the instant appeal. She has characterized the shooting as accidental at various points, including in her first assignment of error. While these inconsistencies do not preclude Travis from asserting alternative arguments in her defense or on appeal, we are mindful that the trier of fact — in this case, the trial court — may have considered these inconsistencies in assessing Travis's testimony and her overall credibility.

{¶ 27} To establish that the affirmative defense of self-defense does not apply, the state must prove at least one of the following elements beyond a reasonable doubt: (1) that the defendant was at fault in creating the situation giving rise to the affray in which the force was used or (2) that the defendant did not have reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm or (3) the defendant used more force than was reasonably necessary to defend against the imminent danger of bodily harm. *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 46 (8th Dist.).

{¶ 28} While not explicitly articulated in her brief, Travis is effectively arguing that her convictions are against the manifest weight of the evidence. In our manifest weight review of a bench trial verdict, we recognize that the trial court

serves as the factfinder, and not the jury. *State v. Crenshaw*, 8th Dist. Cuyahoga No. 108830, 2020-Ohio-4922, ¶ 23. "When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt." *State v. Worship*, 12th Dist. Warren No. CA2020-09-055, 2022-Ohio-52, ¶ 34, quoting *State v. Tranovich*, 12th Dist. Butler No. CA2008-09-242, 2009-Ohio-2338, ¶ 7. To warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must determine that "the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Crenshaw* at ¶ 23. "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which evidence weighs heavily against the conviction.'" *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶ 29} Here, the evidence presented at trial showed that Travis was at fault in creating the situation giving rise to the shooting. The surveillance video and Travis's own testimony show that she retrieved her gun from the car before Frazier reached the car. The surveillance video and Travis's testimony also show that Travis fired a "warning shot." While Travis testified that she was attempting to get away from Frazier following a physical altercation that she claimed occurred as they were leaving the apartment, this testimony was undermined by the balance of the evidence. Webb, who had seen Frazier and Travis seconds before this altercation

allegedly occurred, testified that the couple was not arguing or upset when they were in the apartment. Furthermore, the surveillance footage undermines Travis's claims that Frazier had pulled his gun on her at any point prior to her shooting him in the chest. When he initially walks out of the apartment, the footage shows Frazier carrying the package that he retrieved from Webb's apartment. Moments later, he is seen with his hands raised near his head. While Frazier does take a step towards Travis at one point shortly before she shoots him, he does so with his arms still raised in the air and subsequently steps away from Travis.

{¶ 30} The trial court heard all of this evidence and determined that Travis was not acting in self-defense. Nothing in our review indicates that the trial court clearly lost its way and created a manifest miscarriage of justice in finding that Travis was not acting in self-defense. For these reasons, Travis's third assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
JAMES A. BROGAN, JUDGE*

SEAN C. GALLAGHER, A.J., and
LISA B. FORBES, J., CONCUR

(*Sitting by assignment:  James A. Brogan, J., retired, of the Second District Court of Appeals.)