[Cite as *State v. Tegarty*, 2023-Ohio-1369.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111855 |
| v. | : | |
| MATTHEW R. TEGARTY, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 27, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-659546-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Megan Helton, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Aaron T. Baker, *for appellant.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, Matthew R. Tegarty, appeals from the trial court's judgment, rendered after a bench trial, finding him guilty of rape and gross sexual imposition. For the reasons that follow, we affirm his convictions.

## I. Procedural History

{¶ 2} In May 2021, Tegarty was named in a four-count indictment charging him with rape, a first-degree felony in violation of R.C. 2907.02(A)(2) (force or threat of force); rape, a first-degree felony in violation of R.C. 2907.02(A)(1)(c) (substantial impairment); gross sexual imposition, a fourth-degree felony in violation of R.C. 2907.05(A)(1) (force or threat of force); and gross sexual imposition, a fourth-degree felony in violation of R.C. 2907.02(A)(5) (substantial impairment).

{¶ 3} Tegarty pleaded not guilty and waived his right to a jury trial.

## II. Bench Trial

{¶ 4} On the evening of June 13, 2020, the victim, age 16, and her sister went to the Tegarty residence to hang out with friends. They were friends with Tegarty's sister, A.T. Other individuals were present at the house including Tegarty, who was 18 years old. While at the house, the group hung out, went into the hot tub, and watched a movie in A.T.'s room. Later that evening, another girl came over to the house and brought a bottle of Bacardi alcohol that the group drank in the basement.

{¶ 5} The victim testified that she voluntarily drank a significant amount of alcohol from the bottle. She stated that she spilled alcohol on herself and Tegarty gave her one of his shirts to wear. She testified that she became "very intoxicated" and she had trouble moving around, that she was stumbling, and "very out of it." After drinking the bottle of Bacardi, some members of the group, including the

victim, went upstairs to A.T.'s bedroom. The victim testified that she went back down to the basement where Tegarty and another male were present because it was too hot upstairs and she felt sick. She stated that the boys told her to lie down in Tegarty's bedroom, which was located in the basement. The victim testified that Tegarty helped her to his bedroom, but left and closed the door. Later, Tegarty came back into his bedroom and laid down next to her. The victim testified that he moved closer to her body and when he tried to kiss her, she turned her head away. She testified that she told him that she "can't do this * * * [I have] a boyfriend," and that she "just wanted to lay down." Tegarty reached under her chest and grabbed her breast, and the victim told Tegarty that "you need to stop, we can't do this."

{¶ 6} The victim testified that Tegarty got up from the bed, walked over to the closet, and got a condom. According to the victim, Tegarty walked back to the bed, grabbed her legs, leaned on top of her, pulled her shorts and underwear to the side, fondled her vagina, and proceeded to have sex with her. She stated that she told him to "stop," but that Tegarty only responded by saying "it's okay." The victim testified that she started crying and repeatedly told him to "stop," but that Tegarty calmly repeated "it's okay." She stated that she leaned up, but that Tegarty pushed her back onto the bed and held her there by using his hand against the side of her jaw and neck area, causing her to lay there "frozen." She testified that Tegarty then got up from the bed and walked back to the closet, and when he returned, he continued having sex with her. The victim stated that all she could hear was Tegarty saying "it's okay," which caused her to "just give up."

{¶ 7} The victim stated that after Tegarty stopped, she immediately sat up and told him that she was going upstairs with her sister. Once upstairs, the victim discovered A.T. in the bathroom crying about a personal relationship. The victim consoled her, despite what had just happened to herself. The victim stated that after A.T. left the bathroom, she locked the bathroom door and lay on the floor. She then went into A.T.'s room and fell asleep on a mattress. After waking, the victim changed out of her borrowed clothes and walked home.

{¶ 8} The victim testified that she called her boyfriend and told him what had happened because they were both virgins and she felt ashamed that someone had done this to her. She stated that she did not tell anyone else about what had occurred until her sister asked her, because apparently Tegarty told another friend that he and the victim engaged in consensual sexual activity. The victim denied that what had occurred was consensual.

{¶ 9} During her testimony, the victim read verbatim instant messages exchanged between her and Tegarty. The first group of messages occurred the day after the rape, with Tegarty initiating the conversation and asking whether she was "OK." The victim responded that she was "fine." The next day, Tegarty messaged the victim apologizing to her. The victim responded, stating that they should not talk about what had happened and should pretend it never happened because "that's not who I am and if I was sober I wouldnt [sic] have done that." Tegarty agreed, stating that they were both drunk and that maybe it should not have happened, but

he hoped they could hang out like "friends." Tegarty also assured the victim that she was not a "bad person" for what had occurred.

{¶ 10} The second group of messages occurred in September 2020, with Tegarty again initiating the conversation. In this exchange, Tegarty apologized for talking about what had occurred in June, calling his actions "stupid." The victim expressed her anger that Tegarty took advantage of her being drunk. Tegarty denied that he took advantage of her, stating that they were both drunk and that she suggested they engage in sexual conduct. Tegarty told the victim that she "consented." The victim responded that she did not consent and that he was taking advantage of her not remembering the entire evening, but that she remembered Tegarty "over [her] having sex with [her]."

{¶ 11} At trial, the victim emphatically denied that she suggested or consented to having sexual intercourse. The victim admitted that she remembered what had happened, and that Tegarty held her down and raped her despite her telling him "no."

{¶ 12} The victim's sister testified that she believed that the victim was intoxicated because she was unable to walk and slurring her words. Although the sister testified that the victim threw up, she admitted that she did not tell the investigating officer this information. She stated that the victim was not flirting with Tegarty nor did the victim tell Tegarty that she and her boyfriend were on a "break" from one another.

{¶ 13} Alexandra Bell Jezior, a North Royalton School Resource Officer, testified that she was assigned the victim's case in December 2020 after receiving a report from a social worker about a sexual assault involving a North Royalton High School student. Officer Jezior testified regarding her investigation, including interviewing only certain witnesses.

{¶ 14} Following the close of testimony, the state moved to admit without objection three exhibits: (1) the June 14-15, 2020 Instagram messages exchanged between the victim and Tegarty (exhibit No. 1); (2) the September 27, 2020 Snapchat messages exchanged between the victim and Tegarty (exhibit No. 2); and (3) a Snapchat photo of the victim on June 13, 2020 (exhibit No. 4). The trial court admitted those exhibits into evidence and the state rested its case. The trial court denied Tegarty's Crim.R. 29 motion for judgment of acquittal, and Tegarty did not put forth any defense. The trial court found Tegarty guilty of all four counts and over objection, sentenced him under the Reagan Tokes Law to an indefinite sentence of a stated minimum term of four years in prison and a maximum term of six years.

{¶ 15} Tegarty now appeals, raising four assignments of error, which will be addressed out of order.

## III. Social Media Instant Messages

{¶ 16} During the victim's testimony, the state offered the messages exchanged between the victim and Tegarty following the incident. Without objection, the victim read verbatim both the messages she sent and the messages Tegarty sent. Following the close of the state's case, the state moved to admit the

messages into evidence. The defense did not object, and the trial court admitted them.

{¶ 17} Tegarty's theory throughout trial was that the sexual encounter was consensual but that the victim regretted her decision and claimed that Tegarty raped her. During closing arguments, defense counsel argued the existence of reasonable doubt by focusing on the inconsistent and contradictory testimony given by the victim and her sister. Additionally, counsel contended that there was evidence of consent by relying on the messages exchanged between the victim and Tegarty.

{¶ 18} The court interjected by quoting one of Tegarty's September messages that admitted to engaging in sexual conduct with the victim but claimed that it was consensual. The court concluded that based on this message, the only issue was "force" and "substantial impairment," but questioned whether it was the defense's position that the conduct was consensual based on Tegarty's own statement. Defense counsel affirmed that was their position.

{¶ 19} The trial court explained that Tegarty could not "offer" his statement to support his position because, "[h]is statement is that of a party opponent, but it's not offered against himself. A party may not introduce his own statement." (Tr. 198.) When counsel reminded the court that the messages were stipulated exhibits the court admitted into evidence, the court responded, "[a] defendant cannot introduce a self-serving statement, unless it's against his interest. Saying that she consented is not against his interest." (Tr. at *id.*) Relying on *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 105, the court stated "that

a party cannot offer exculpatory evidence on their behalf. It has to be a party's statement against their own interest. And if he is saying that she consented, that's his defense. It's hardly against his interest." (Tr. at 198-199.) Defense counsel reiterated that consent was the theory of their case, based on the inconsistencies between the messages and the evidence at trial, and that Tegarty did not have to prove his innocence. The court agreed, but stated:

> I understand, but the extent that you are — that it's been relied upon or thought to be relied upon that he's made this statement and therefore he is not liable, it's not a statement against interest and the Court cannot consider it as a statement of the party opponent because it's not — it does not tend to inculpate him; it tends to exculpate him. And he didn't testify, wasn't subject to cross-examination. That's the reason why it may not have the weight that you would like it to.

(Tr. at 199-200.) The trial court maintained, however, that counsel was "absolutely correct" that Tegarty is presumed innocent and that the state had the burden of proof, and that it would "evaluat[e] all the evidence that's available." (Tr. 200, 202.)

{¶ 20} In his third assignment of error, Tegarty contends that the trial court abused its discretion and denied him due process at trial under both the United States and Ohio Constitutions in "refusing to give proper consideration" to text conversations between him and the victim despite admitting the messages into evidence as exhibits and through the victim's testimony, without objection or admissibility-qualification. He maintains that he did not put forth a defense because he believed that the trial court would give the messages proper consideration under the rules of evidence.

{¶ 21} Tegarty recognizes that in a bench trial, a presumption exists that the court only considered relevant, material, and competent evidence, but contends that this presumption is rebutted by the record and the trial court's statements that it was not giving his messages any weight due to the trial court's belief that the messages were inadmissible. He contends that his statements in the instant messages were admissible under Evid.R. 801(D)(2) as nonhearsay because it was the state that "offered" or "introduced" them in its case-in-chief. Tegarty is correct.

{¶ 22} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is not admissible unless it falls within one of the permissible hearsay exceptions. Evid.R. 801. One such exception is for admissions by a party opponent under Evid.R. 801(D)(2). A statement is not hearsay if "[t]he statement is offered against a party and is * * * the party's own statement, in either an individual or a representative capacity[.]" Evid.R. 801(D)(2)(a)

{¶ 23} Under Evid.R. 801(D)(2)(a), the trial court properly permitted the state to introduce, through the victim's testimony, the messages exchanged between the victim and Tegarty because the state offered them against Tegarty and they were his own statements.

{¶ 24} The trial court's statement that a defendant cannot offer his own exculpatory statement under Evid.R. 801(D)(2)(a) is also correct. *See State v. Wilson*, 12th Dist. Clermont No. CA2001-09-072, 2002-Ohio-4709, ¶ 58; *State v. Lewis*, 7th Dist. Mahoning No. 03 MA 36, 2005-Ohio-2699, ¶ 127. And the trial

court's reliance on *Cunningham,* 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, for this proposition was proper. However, the trial court was incorrect in its application of Evid.R. 801(D)(2)(a) as to Tegarty's *reliance* on the properly admitted messages and testimony. By virtue of the state offering Tegarty's statements made in the messages, and not Tegarty himself, the statements were admissible under Evid.R. 801(D)(2)(a). And Tegarty's subsequent attempt to rely on his statements in his defense and closing argument did not run afoul of this rule. Therefore, the court was mistaken in its understanding of Evid.R. 801(D)(2)(a) in this instance.

{¶ 25} The trial court confused the issue further by its subsequent statements that Tegarty could not offer his self-serving statement unless it was against his interest or inculpatory. This requirement refers to the hearsay exception in Evid.R. 804(B)(3), "statements against interest," and does not apply to statements made by a party to the action. *See State v. Webster*, 1st Dist. Hamilton No. C-120452, 2013-Ohio-4142, ¶ 66 (explaining Evid.R. 801(D)(2) and 804(B)(3) reflect two distinct concepts). Instead, Evid.R. 801(D)(2)(a) does not require that the statement be "against interest," but rather applies to *any* prior statement of a party, so long as it is offered against the party at trial. *Wilson* at ¶ 57; *State v. Baker*, 137 Ohio App.3d 628, 652, 739 N.E.2d 819 (12th Dist.2000); Weissenberger's *Ohio Evidence Treatise*, Section 801.33, at 367 (1998).

{¶ 26} Accordingly, while a defendant cannot *offer* his prior statements under Evid.R. 801(D)(2)(a), the rule does not preclude him from *relying* on the statements when properly offered by the state and admitted by the court. The

court's statement was therefore erroneous. Nevertheless, the trial court's confusion and conflation of these two evidentiary rules does not warrant reversal of Tegarty's convictions because it did not affect his substantial rights.

{¶ 27} The state had to prove that the sexual conduct between the victim and Tegarty was because of force or because the victim was unable to consent due to substantial impairment. By its very definition, if a person of sound mind voluntarily consented to engaging in sexual conduct, then the state is unable to satisfy its burden of proof. The trial court acknowledged the state's burden by stating "you are absolutely right, the State has the burden of proof. I have to find whether or not they have met that burden. He is presumed innocent and it is solely the State's burden." (Tr. 200.) And in doing so, the court stated that it would evaluate all of the available evidence, which we note included all of the messages and the testimony provided. Nothing in the record before this court indicates that the trial court acted contrary to its statement.

{¶ 28} Tegarty maintains, however, that the trial court's ruling was prejudicial and deprived him of due process to a fair trial because he relied on the complete admission of the exhibits, including their evidentiary weight, in his strategic decision to not present a defense. He maintains on appeal that had he known that the trial court would not give appropriate weight to his messages claiming that the sexual conduct was consensual, he would have made different decisions regarding trial strategy. This hindsight argument is not supported by the record.

{¶ 29} The record is devoid of any assertion by Tegarty contending that the trial court's ruling affected his trial strategy. After being advised by the trial court that the self-serving portions of the text messages "may not have the weight [counsel] would like," counsel did not indicate that his trial strategy would have been different or that Tegarty would have otherwise testified. His entire defense was that the sexual conduct was consensual. In addition to the messages between him and the victim, Tegarty supported this defense with the victim's delay in reporting the incident, her statement to police, the inconsistencies and contradictions in testimony by the victim and her sister, and his contention that the investigation by police was inadequate and incomplete.

{¶ 30} Even though the trial court erroneously stated it would not consider Tegarty's statements asserting consent, the state introduced the messages without redaction and the trial court heard the victim's testimony, which included reading the messages verbatim. The victim was subject to cross-examination where defense counsel questioned her extensively on the content of the messages and the discrepancies in her wording, text, and tone between the two different groupings of messages. So, although the trial court stated it would not consider Tegarty's apparent self-serving statements, the victim's responses to those statements implicitly provided context into the nature and content of Tegarty's messages and claims of consent.

{¶ 31} Finally, even considering Tegarty's statements in his messages asserting his belief that the victim consented to the sexual conduct, the victim denied

in her messages and at trial that she consented. Tegarty saying that it was consensual in his messages does not establish that it was in fact consensual. The trial court, as finder of fact, can give evidence and testimony the weight it deems appropriate. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus (the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact). The trier of fact may "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). Granted, although the trial court stated that the messages "may not have the weight that you would like it to," this statement is well-within the purview of the trier of fact assessing weight of the evidence and credibility.

{¶ 32} Based on the foregoing, the trial court's statements and decision did not deprive Tegarty of his due process right to a fair trial. The third assignment of error is overruled.

## IV. Sufficiency of the Evidence

{¶ 33} Where a party challenges the sufficiency of the evidence supporting a conviction, a determination of whether the state has met its burden of production at trial is conducted. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). An appellate court reviewing sufficiency of the evidence must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235,

818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Under a sufficiency inquiry, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387.

{¶ 34} Tegarty contends in his second assignment of error that the state presented insufficient evidence of "substantial impairment" to support his convictions of rape and gross sexual imposition as charged in Counts 2 and 4 of the indictment.

{¶ 35} The trial court found Tegarty guilty of all counts of the indictment. The trial court agreed with the state that Counts 1 and 2 should merge for sentencing and Counts 3 and 4 should also merge. The state elected that the court sentence Tegarty on Count 1 — rape by force — and Count 3 — gross sexual imposition by force. Accordingly, Tegarty was only *convicted* of Counts 1 and 3. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 24 ("conviction" consists of a finding of guilty and a sentence).

{¶ 36} When counts in an indictment are allied offenses and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the reviewing court need not consider the sufficiency of the evidence on the counts that are subject to merger because any error relating to those counts would be harmless. *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14, citing *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191

(1990). *See also State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 25 (considering the sufficiency-of-the-evidence challenge only on those convictions surviving merger), citing *Whitfield* and *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 138 (merger of kidnapping count with aggravated-robbery and aggravated-burglary counts moots sufficiency-of-the-evidence claim regarding kidnapping count).

{¶ 37} In this case, Tegarty has not made a sufficiency-of-the-evidence challenge regarding his convictions in Counts 1 and 3, effectively conceding that sufficient evidence was presented to support his convictions of the sexually oriented offenses committed by use of force. Because no argument has been raised and Counts 1 and 3 are the surviving counts following merger, this court could summarily overrule Tegarty's assignment of error. *See* App.R. 12 and 16. Nevertheless, even without the perceived concession on Counts 1 and 3, this court finds that sufficient evidence was presented to support Tegarty's convictions for forcible rape and gross sexual imposition.

{¶ 38} Count 3 charged Tegarty with gross sexual imposition, in violation of R.C. 2907.05(A)(1). The indictment provided that Tegarty "did have sexual contact, to wit: fondled breasts * * * by purposely compelling [the victim] to submit by force or threat of force." "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01. Under this definition, even minimal constraint or physical exertion is sufficient. *See State v. Heiney*, 2018-Ohio-3408, 117 N.E.3d 1034, ¶ 112 (6th Dist.); *State v. Schellentrager*,

8th Dist. Cuyahoga No. 105652, 2017-Ohio-9275, ¶ 13, citing *State v. Elam*, 2016-Ohio-5619, 76 N.E.3d 391, ¶ 44 (8th Dist.) (sexual contact means any nonconsensual physical touching, even if through clothing of another).

{¶ 39} The victim testified that Tegarty laid in bed next to her, moved his body close to hers, and tried to kiss her. When she turned her head away telling him that she had a boyfriend, Tegarty put his arm underneath her chest "and start[ed] to grab on [her] chest area." The victim clarified that Tegarty touched her breast despite her telling him that he "needed to stop." Tegarty's movement of his body and manipulation of his arm underneath the victim to touch her breast despite the victim telling him to stop is sufficient to support Tegarty's conviction for gross sexual imposition as charged in Count 3 of the indictment. *See, e.g., State v. Guenther*, 9th Dist. Lorain No. 05CA008663, 2006-Ohio-767, ¶ 20 (movement of body to prevent victim from leaving to touch her breast; victim telling defendant to stop sufficient for gross sexual imposition by use of force).

{¶ 40} Count 1 charged Tegarty with forcible rape, in violation of R.C. 2907.02(A)(2). The indictment provided that Tegarty "did engage in sexual conduct, to wit: vaginal penetration * * * by purposely compelling her to submit by force or threat of force." The victim testified that Tegarty grabbed her legs, leaned on top of her, pulled her shorts and underwear to the side, fondled her vagina, and proceeded to have sex with her. She stated that she told him to "stop," and when she tried to get up, he pushed her back onto the bed by using his hand against the side of her jaw and neck area. She stated that she lay there frozen as he held her

there. The victim's testimony is sufficient to support Tegarty's conviction for forcible rape as charged in Count 1 of the indictment.

{¶ 41} Accordingly, because this court finds that sufficient evidence was presented supporting Tegarty's convictions on Counts 1 and 3 for forcible rape and gross sexual imposition, any error in the sufficiency of the evidence on Counts 2 and 4 — rape and gross sexual imposition because of substantial impairment — would be harmless. The assignment of error is overruled.

## V. Manifest Weight of the Evidence

{¶ 42} In his first assignment of error, Tegarty contends that "the trial court erred by entering judgments of conviction as to all counts of the indictment that were against the manifest weight of the evidence in derogation of [his] right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution."

{¶ 43} In contrast to a challenge based on sufficiency of the evidence, a manifest-weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. In our manifest-weight review of a bench trial verdict, we recognize that the trial court serves as the factfinder, and not the jury. *State v. Crenshaw*, 8th Dist. Cuyahoga No. 108830, 2020-Ohio-4922, ¶ 23. "'When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate

court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt.'" *State v. Worship*, 12th Dist. Warren No. CA2020-09-055, 2022-Ohio-52, ¶ 34, quoting *State v. Tranovich*, 12th Dist. Butler No. CA2008-09-242, 2009-Ohio-2338, ¶ 7. To warrant reversal from a bench trial under a manifest-weight-of-the-evidence claim, this court must determine that "the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Crenshaw* at *id*. "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which evidence weighs heavily against the conviction.'" *Id*., quoting *Thompkins* at 547.

{¶ 44} Tegarty contends that his convictions for forcible rape and gross sexual imposition are against the manifest weight of the evidence because the victim's message exchanged after the rape and her trial testimony were inconsistent. Specifically, he contends that (1) the victim testified unequivocally about the entirety of the evening, but in her messages, she stated that she was unable to recall what occurred; (2) the victim testified that she told Tegarty to stop and physically resisted him, but in her messages she only stated that she did not give affirmative consent; and (3) the victim's subsequent messages reveal that "regret" was her motivation to "embellish" what occurred. This court disagrees.

{¶ 45} First, the victim testified extensively about the sexual assault that occurred in the late-night hours in Tegarty's bedroom. In fact, during cross-

examination, she stated that she was not alleging that she did not remember what had occurred but that Tegarty forced her after she said "no." (Tr. 135.) The social media messages exchanged between the victim and Tegarty following the sexual assault do not render her testimony inconsistent. In fact, in the September messages, the victim stated, "I don't remember the full night but I remember you over me having sex with me."

{¶ 46} Next, Tegarty's characterization of the victim's social media messages as "regret" and motivation to "embellish" the assault is without merit. Rather, the victim's initial June messages, which occurred the day after the assault, can be characterized as disappointment and her asking that they just "pretend it didn't happen." Despite her request, Tegarty disclosed to others that they engaged in sexual conduct and mischaracterized it as consensual. The subsequent September messages between them reveal that the victim expressed anger and self-loathing about the situation, not regret or a need to embellish the sexual assault. In fact, the victim did not report the assault until she was hospitalized in December. The fact that the victim had regrets about consuming alcohol and leaving herself in a vulnerable situation does not create a motive for her to fabricate a sexual assault.

{¶ 47} Finally, whether the victim physically resisted and told Tegarty to "stop" as opposed to not giving "affirmative consent" is irrelevant. R.C. 2907.02(C) does not require that physical resistance needs to be established for a person to be charged for rape. Moreover, the victim stated in her messages and again reiterated

at trial that she did not consent to sexual intercourse with Tegarty and that he took advantage of the situation. We agree.

{¶ 48} Tegarty knew that the victim was in his bedroom in an intoxicated state. He was present when she consumed a substantial amount of alcohol, and he assisted the victim into his bedroom when she wanted to lie down. The victim did not ask if she could lie down in his bedroom; rather, it was Tegarty and the other male that suggested that she lie down in Tegarty's bedroom. The testimony by both the victim and her sister revealed that the victim only wanted to lie down in the basement because it was cooler and she was feeling sick. No evidence was presented that the victim and Tegarty engaged in flirtatious conduct that evening to insinuate that the victim was interested in engaging in sexual conduct with him, that the victim invited Tegarty into his bedroom with her, or that she asked that he lie down beside her. The evidence demonstrates that it was Tegarty's own actions that placed him in the bedroom with the victim that night.

{¶ 49} Even if this court were persuaded by Tegarty's assertions that the victim somehow initiated or acquiesced to the initial encounter, once the victim protested, asking and telling him to "stop," her consent was revoked and his repeated assurances of "it's okay" while proceeding and continuing to have sexual intercourse with her and using his hand to hold her down by her neck and jaw amounts to forcible rape. Evidence of consent, or lack thereof, is not a static concept. *State v. Boyd*, 2022-Ohio-3523, 198 N.E.3d 514 (7th Dist.), ¶ 58, citing *State v. Freeman*, 2d Dist. Greene No. 2020-CA-33, 2021-Ohio-734, ¶ 42. In *State v.*

*Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 32 (2d Dist.), the Second District explained:

> [Forcible] rape can be established when the two participants start the sexual encounter on a consensual basis, but the consent is revoked by words, actions or conduct that clearly communicates non-consent, and the defendant fails to respect the change in consent, and purposely proceeds to engage in sexual conduct through force or threat of force evidenced by violence, physical restraint, or some type of coercive or threatening conduct that creates a belief or fear that physical force will be used if the victim does not consent.

*See also In re E.S.*, 5th Dist. Delaware No. 21CAF080041, 2022-Ohio-2003 (when the sexual activity was no longer consensual and became a forcible act, appellant committed rape). Accordingly, this is not the exceptional case in which the evidence weighs heavily against the convictions. Tegarty's convictions for forcible rape and gross sexual imposition as charged in Counts 1 and 3 are not against the manifest weight of the evidence.

{¶ 50} Tegarty also independently argues that the counts for which he was found guilty, but that merged — i.e. rape and gross sexual imposition because of substantial impairment — were against the weight of the evidence. Again, because those offenses were merged into Counts 1 and 3, this court need not address these offenses. *State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶ 23. This court's conclusion that Tegarty's convictions for forcible rape and gross sexual imposition were not against the manifest weight of the evidence necessarily renders any issues with the merged offenses to be harmless error because his final sentence

would not be affected by any review of the evidence underlying the merged counts. *Id.*, citing *Powell*, 49 Ohio St.3d at 263, 552 N.E.2d 191.

{¶ 51} The assignment of error is overruled.

## VI. Reagan Tokes Law

{¶ 52} Tegarty raises as his fourth assignment of error that the trial court erred when it found S.B. 201, commonly referred to as the Reagan Tokes Law, to be constitutional and imposed an indefinite sentence under that law.[1]

{¶ 53} Tegarty contends that the trial court erred when it sentenced him to an indefinite sentence under the Reagan Tokes Law because the law violates constitutional guarantees of due process, the separation-of-powers doctrine, and the right to trial by jury. He acknowledges that this court's en banc decision of *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, ¶ 17-51 (8th Dist.), rejected these arguments challenging the constitutionality of the Reagan Tokes Law, thus affirming that his arguments are advanced to preserve the claim for further review. Based on the authority of *Delvallie*, we summarily overrule Tegarty's challenges and his assignment of error.

{¶ 54} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

---

[1] Neither party has raised any issues as to the imposed sentence; therefore, any determination as to the validity of the sentence is beyond the scope of this direct appeal. *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 26; *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 27.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
MICHAEL JOHN RYAN, J., CONCUR


N.B. Judge Emanuella D. Groves concurred with the opinions of Judge Lisa B. Forbes (dissenting) and Administrative Judge Anita Laster Mays (concurring in part and dissenting in part) in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.