[Cite as *In re L.S.*, 2023-Ohio-4122.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| IN RE L.S. | : | |
| A Minor Child | : | No.112317 |
| | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 16, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-22-107684

---

***Appearances:***

Cullen Sweeney, Cuyahoga County Public Defender, and
Britta Barthol, Assistant Public Defender, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Anjali Kanwar and Michael Stechschulte,
Assistant Prosecuting Attorneys, *for appellee.*

ANITA LASTER MAYS, A.J.:

{¶ 1} Seventeen-year-old defendant-appellant L.S. ("L.S.") appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, finding L.S. delinquent in this case. We affirm the juvenile court's judgment.

## I.  Background and Facts

{¶ 2}   On November 22, 2022, a dispositional trial was held to determine whether L.S. was delinquent for the commission of two counts of rape, R.C. 2907.02(A)(2), each a first-degree felony, involving digital penetration and vaginal intercourse respectively, and a third count for kidnapping, a first-degree felony under R.C. 2905.01(A)(4).

{¶ 3}   Alleged victim S.C. testified that she was 18 years of age at the time of the October 4, 2021 encounter.  S.C. stated that L.S. was her best friend for about three and one-half years.  S.C. resided with her family in the first-floor unit of a two-family home.  Her sister's family resided on the second floor.

{¶ 4}   L.S. stopped by the house to charge his phone at about 5:00 p.m.  The two were smoking marijuana. S.C.  went upstairs to prepare food for her seven-year-old nephew, and L.S. followed about an hour later.  The nephew fell asleep on the couch, and the two smoked marijuana upstairs.  L.S. began rubbing her thigh while S.C. was speaking with her sister on the phone, but S.C. moved his hand.  S.C. completed the call, went to the restroom, and returned downstairs.

{¶ 5}   L.S. requested intimacy, but S.C. refused, stating they both were involved in other relationships.  The two had previously been intimately involved.

{¶ 6}   S.C. texted her boyfriend to pick her up.  L.S. followed S.C. to the bathroom where she planned to shower, but L.S. kept asking for sex and tried to remove her shorts.  S.C. walked into the bedroom and sat on the bed.  L.S. began "fingering" her through an open area of her loose-fitting shorts, was somehow able

to remove her shorts, and, while "leaning on" her, initiated coitus vaginally telling her to "just let it happen." S.C. said she placed her hands on L.S.'s chest and pushed but could not push him off. S.C. began crying, and L.S. stopped.

{¶ 7} S.C. entered the bathroom and called her older sister and told her what happened. L.S. picked up his bookbag, saw that S.C. was in the bathroom, and left. The sister called the police and an ambulance. S.C. told the police what happened, and she was taken to the hospital. She received a text from L.S. about 30 minutes after she left the house. A copy of the text was entered into evidence that said:

> I'm sorry, [S.C.]. I didn't know you was fooling when you said no. I thought you was just saying it to say that. Don't cry. I didn't mean to hurt you on my dad — on my father, but I guess I will just leave you alone for a while. I still love you though.

(Tr. 29-30.)

{¶ 8} A rape kit was administered at the hospital, and S.C. told the nurse what transpired. Besides the police that responded to S.C.'s home, S.C. talked with a detective about three months after the incident.

{¶ 9} S.C. clarified during cross-examination that she was only intimate with L.S. once prior to the incident in this case. After fixing her nephew's dinner and returning to the first floor, she was cleaning the tub to take a shower before her boyfriend arrived when L.S. entered the bathroom seeking intimacy, then went into her bedroom and sat on the bed. L.S. did not push her down or force her onto the bed.

{¶ 10} S.C. stated that she sent a text to L.S. about a week before trial and asked for closure "because we were so close and we had the history that we had, I didn't want like — I was thinking about him more than I was thinking about myself and my own feelings." (Tr. 47.) "I didn't have remorse. I felt sad. Like I was mad at myself, but at the time same — [w]e were still friends, like —." (Tr. 48.)

{¶ 11} S.C. avoided speaking with the detective at first because she was afraid and did not want to go to court or testify or see anyone's face. When she texted L.S., she explained why she delayed moving forward with the case.

> He responded and said that — when he texted me back, he had said I never did anything to you. The only thing I ever did was finger you, and then he said, I was moaning and saying we can't keep doing this, and then he seen me crying and then he left.

(Tr. 51.)

{¶ 12} S.C. replied, "I told him like, yes, it did happen, and I remember it happening." (Tr. 51.)

> I don't want anything to do with him. I don't want to be bothered by him. I don't want to rekindle the friendship, because right is right and wrong is wrong, and he needs to understand when somebody say stop, you need to stop.
>
> If somebody doesn't want to have sex with you, you shouldn't pressure them into having sex with you.

(Tr. 52.) S.C. also confirmed that nobody else except her nephew was in the house during the time that L.S. was there.

{¶ 13} S.C.'s older sister ("Sister") who resided on the second floor testified that the day of the incident, she came home and walked into her sister's house on the first floor. L.S. was there talking on the phone, they spoke, and Sister went

upstairs. She was in and out in a few minutes. S.C. called later and said, I told him "no" and burst out crying. S.C. confirmed that she had been raped by L.S. Sister called the police and asked for an ambulance. Sister saw L.S. walking down the street when she returned to the house and the police were searching the area. Sister heard that someone called S.C. to say L.S. was talking about the incident with a group of boys so Sister notified the principal of L.S.'s high school of the alleged events.

{¶ 14} Forensic Nurse McMahan of University Hospitals who is trained as a sexual assault nurse examiner ("SANE") testified that S.C. reported she was sexually assaulted and named her assailant. She reported that she was kissed on the back of the neck, was touched on her thigh, was penetrated vaginally by penis and finger, and had tenderness to her right thigh. No genital or external injuries were noted. McMahan stated that less than 10 percent of sexual assaults have genital injuries.

{¶ 15} Detective Adkins ("Det. Adkins") of the Cleveland Police Sex Crimes and Abuse Unit investigated the case. The detective interviewed the victim and her sister, obtained medical records, had the forensics lab process the rape kit, and received the results. She was unable to contact L.S. because the phone was disconnected and she did not have an accurate address. Det. Atkins recalled contacting S.C. approximately two weeks after receipt of the report. S.C. informed her of her friendship with L.S. and the sexual assault and that L.S. reached out via text while S.C. was at the hospital.

{¶ 16} Det. Adkins was not aware that S.C. texted L.S. prior to trial and had been unable to contact S.C. after the interview to follow up because the number was no longer in service. The detective visited the house, but S.C. was not there. She did not follow up and was unable to reach L.S. but sent his information obtained from S.C. to the juvenile court.

{¶ 17} The juvenile court declared L.S. delinquent on all counts. The dispositional trial was held on December 19, 2022. The full probation report was prepared, but the referral for a sexual offender's assessment had not been fulfilled. The juvenile court moved forward and stated L.S. would be ordered to cooperate and successfully complete a sexual offender's treatment program and to follow the assessment recommendations.

{¶ 18} The probation investigator testified that L.S. had no prior cases and had graduated from high school. L.S. still believed he did not commit the acts charged. There was only one disciplinary event in the tenth grade, and there were none prior to that time. L.S. was raised by his grandmother but lived with his mother and other family members for the past two years.

{¶ 19} The investigator stated that "outside of this case * * * and its findings, there were a lot of red flags." (Tr. 6.) "He states that he began smoking marijuana at the age of 16 and has been a multiple times per week user over about a two-year span." Tr. (6-7.) The investigator recommended that L.S. "be given the opportunity for community-based treatment" noting that

L.S. is employed and should be subject to random urine screens.

L.S. will need to follow up with Ohio Guidestone for a sex offender assessment and follow their recommendations.

The supervising probation officer will see that L.S. receives any other services deemed to be necessary.

{¶ 20} The prosecutor, who was not present for the trial, was "particularly bothered to hear L.S. still denies that he did anything wrong here" and recommended an Ohio Department of Youth Services commitment and a Tier-3 sex offender designation that required lifetime registration. He also said S.C. asked the state to reiterate that "no means no." (Tr. 10.)

{¶ 21} Defense counsel concurred with the recommendation of the probation department. Counsel also defended L.S.'s right to express that he did not believe he was guilty and he had a right to appeal.

{¶ 22} The juvenile court stated:

The Court found that he met the elements of the charges and the Court found him delinquent of two counts of Rape and a count of Kidnapping, and it appears it was mostly because of what he claims was his misunderstanding of when the girl said no.

Okay. But the Court found him delinquent of these charges. It isn't the Court's decision to decide that just because he didn't understand what no means, you know, it's not the Court's problem. It's not the girl's problem. Okay. It's his problem.

And part of the testimony in fact that was in evidence is L.S. sent a text message to the victim. They had been friends for a long time and in that text message he said he was sorry for what happened and he said something to the effect that I didn't know what you meant by saying no, something to that effect.

Okay. So he admits that she said no, so he's telling us that it was his understanding that she didn't mean it I guess for some reason. But that's his problem. But she definitely said that's it, no, and he proceeded.

But it certainly wasn't a violent attack.

(Tr. 13-14.)

{¶ 23} The juvenile court determined:

All right. So on the Complaint, count number one, [L.S.] is referred to Community Control and put on Probation with a Probation Officer.

He is referred for a Sex Offender Assessment. He is ordered to comply and follow through with the Sex Offender Assessment and any recommendations that are made therein.

He is to successfully complete a sex offender's treatment program.

Okay. He's put on probation for two years. If he does well, the Probation Department can certainly request that he be terminated at a much earlier time depending on how well he does with these orders, but that's what we'll start off with.

He's ordered not to be doing any drugs or alcohol just like anyone else on probation. So he'll be ordered to comply with random drug screens.

We'll order that he pay the Court costs, and then finally, he'll be ordered to comply with any referrals that are deemed appropriate by the supervising probation officer.

Count number two is also a Rape charge that he was found delinquent of. On count two we'll order that he do 20 hours community service.

On count three he was found delinquent of Kidnapping. On that count I will refer that count to count number one putting him on probation.

(Tr. 14-15.) L.S. was also ordered to provide DNA and fingerprints.

{¶ 24} The juvenile court agreed with defense counsel that a Tier-1 registration would be appropriate in the case that, among other things, required annual in-person registration for a period of ten years. The juvenile court, state, and defense counsel reviewed the Sexual Offender's Registration form with L.S. and his mother on the record.

{¶ 25} On December 29, 2022, in addition to the stated conditions, the juvenile court issued the following dispositional journal entry: On Count 1, L.S. was placed on community control for two years. "As to Count 2: Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2), and Count 3: Kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(4), the Child is to complete 20 hours of community service." Journal entry No. 0916422555, p. 1. (Dec. 29, 2022).

{¶ 26} On January 5, 2023, L.S. appealed. The appeal was fully briefed by May 30, 2023. On June 7, 2023, the case was remanded for a nunc pro tunc journal entry to address certain discrepancies. On July 7, 2023, the juvenile court issued a nunc pro tunc entry. On July 19, 2023, the case was remanded for an entry that satisfied the requirement that the disposition for each count, the judge's signature, and the file stamp of the clerk for all be set forth in a single document in order to present a final, appealable order. *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163; *State v. Lester*, 130 Ohio St.3d, 303, 2011-Ohio-5204, 958 N.E.2d 142. A corrected journal entry was submitted dated July 24, 2023.

{¶ 27} The discrepancies addressed were for Counts 2 and 3. "As to Count 2: Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2), the child is to complete twenty (20) hours of community service." "As to Count 3: Kidnapping, a felony of the first-degree, in violation of R.C. 2905.01(A)(4), Count 3 is hereby merged with Count 1, Rape, for purposes of disposition."

## II. Assignments of Error

{¶ 28} L.S. assigns four errors in this case:

I. The juvenile court erred when it failed to merge appellant's dispositions for rape and kidnapping as they are allied offenses of similar import.

II. The evidence produced at trial was insufficient to support appellant's adjudications for rape and kidnapping.

III. Appellant's dispositions for rape and kidnapping were against the weight of the evidence.

IV. Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution when his attorney failed to argue that appellant's adjudications for rape and kidnapping are allied offenses of similar import.

## III. Analysis

### A. Merger

{¶ 29} The issue of merger was not argued at the juvenile-court level. The failure of an accused to raise the issue of allied offenses of similar import in the juvenile court forfeits all but plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. "[A] forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *Id.* "[A]n accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus." *Id.* A juvenile court does not have a duty to inquire about allied offenses if the defense fails to raise it at disposition. *Id.* at ¶ 6.

{¶ 30} "R.C. 2941.25(A) allows only a single conviction for conduct that constitutes 'allied offenses of similar import.'" *State v. Frierson*, 2019-Ohio-317, 129 N.E.3d 1004, ¶ 28 (8th Dist.).

> Pursuant to R.C. 2941.25(B), a defendant charged with multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13, citing *State v. Moss*, 69 Ohio St.2d 515, 519, 433 N.E.2d 181 (1982).

Id.

{¶ 31} L.S. argues that the rape (R.C. 2907.02(A)(2)) and kidnapping (R.C. 2905.01(A)(4)) charges should have merged because the offenses stemmed from the same conduct and similar import. The state agrees that the kidnapping and rape offenses "are similar, committed at the same time, and with the same motivation. Therefore, per *Ruff*, the dispositions should merge." Appellee brief, p. 10.

{¶ 32} At the dispositional trial, on Count 1, the juvenile court ruled that L.S. was "referred to Community Control and put on Probation with a Probation Officer." On Count 2 "also a Rape charge that he was found delinquent of. On count two we'll order that he do 20 hours community service." On Count 3, L.S. "was found delinquent of Kidnapping. On that count I will refer that count to count number one putting him on probation."

**{¶ 33}** As stated above, the July 24, 2023 dispositional entry was corrected to clearly state that Count 1, rape, and Count 3, kidnapping, merged. Thus, the first assignment of error is moot. App.R. 12((1)A)(C).

### B. Sufficiency and manifest weight

**{¶ 34}** We combine the second and third assigned errors for judicial efficiency. We find that the errors lack merit.

**{¶ 35}** "'A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law.'" *State v. Parker*, 8th Dist. Cuyahoga No. 110716, 2022-Ohio-1237, ¶ 7, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry [in a sufficiency challenge] is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶ 36}** When making a sufficiency determination, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at *id.* Under a sufficiency challenge, witness credibility is immaterial; the appellate court must defer to credibility determinations of the trier of fact and only review issues of law. *Parker* at ¶ 7.

{¶ 37} A manifest weight challenge and a sufficiency of the evidence challenge pose two distinct challenges to the evidence presented. *State v. Miree*, 2022-Ohio-3664, 199 N.E.3d 72, ¶ 30 (8th Dist.), citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. A challenge to the manifest weight of the evidence "'involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins* at *id.* Weight of the evidence examines "'the evidence's effect of inducing belief.'" *Id.*, quoting *Wilson* at ¶ 25, citing *Thompkins* at 386-387.

{¶ 38} In reviewing a manifest-weight claim, the court must consider all the evidence in the record, the reasonable inferences drawn from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Finally, the discretionary power to grant a new trial should be reserved for exceptional cases where "'the evidence weighs heavily against the conviction.'" *Id.*, quoting *id.*

{¶ 39} L.S. contends that the evidence failed to satisfy all elements of the offenses because it does not show that the sexual conduct was forcible or against S.C.'s will. R.C. 2907.02(A)(2) provides, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 40} R.C. 2905.01(A)(4) provides:

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

\* \* \*

(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.

{¶ 41} L.S. argues that the element of force is absent. Force is defined in R.C. 2901(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." This court has previously held that the removal of a victim's "panties without her consent is sufficient evidence of force or the threat of force." *State v. Whitt*, 8th Dist. Cuyahoga No. 82293, 2003-Ohio-5934, ¶ 22. In this case, S.C. testified that L.S. removed her shorts.

{¶ 42} This court has stated that the phrase, "to restrain the liberty" for purposes of kidnapping under R.C. 2905.01(A)(4), means "'to limit one's freedom of movement in any fashion for any period of time.'" *State v. Woodson*, 8th Dist. Cuyahoga No. 95852, 2011-Ohio-2796, ¶ 13, quoting *State v. Wingfield*, 8th Dist. Cuyahoga No. 69229, 1996 Ohio App. LEXIS 867, 6 (Mar. 7, 1996); *see also State v. Walker*, 9th Dist. Medina No. 2750-M, 1998 Ohio App. LEXIS 4067, 5 (Sept. 2, 1998) (restraint of liberty does not require prolonged detainment and may even be temporary or merely compelling the victim to stay where he is).

{¶ 43} S.C. exited the bathroom where L.S. had followed her and repeatedly requested sex. She left the bathroom, sat on the bed, and L.S. joined her. The two had been intimate once before. S.C. testified that L.S. did not force her onto the bed.

However, L.S. began touching her and pulling down her shorts, then leaned her back onto the bed and committed the acts. S.C. testified that she pushed L.S.'s hand away and told him no "probably like about 15 times." She also pressed against his chest during the act but was unable to get up which constitutes restraint, though L.S. stopped when S.C. began to cry. L.S. texted S.C. that he did not understand that she was serious and apologized. Thus, the elements of force and restraint were substantiated for both rape and kidnapping.[1]

{¶ 44} Based on a thorough review of the record, this court cannot say that when viewed in a light most favorable to the prosecution, the evidence presented was insufficient to support the element of force. We also cannot say that the juvenile court as trier of fact clearly lost its way. The trier of fact was in the best position to determine the credibility of the testimony in this case. *See State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "The trier of fact may take note of any inconsistencies and resolve them, accordingly, choosing to believe all, none, or some of a witness's testimony." *State v. Shutes*, 8th Dist. Cuyahoga No. 105694, 2018-Ohio-2188, ¶ 49.

{¶ 45} The second and third assignments of error are overruled.

---

[1] Even in situations where the encounter begins consensually, "'once the consent has been revoked by words, actions or conduct that clearly communicates non-consent,'" where the defendant continues to "'purposely engage in sexual conduct through force or threat of force evidenced by violence, physical restraint or some type of coercive or threatening conduct'" forcible rape can be established. *State v. Tegarty*, 8th Dist. Cuyahoga No. 111855, 2023-Ohio-1369, ¶ 49, quoting *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 32 (2d Dist.).

## C. Ineffective assistance of counsel

{¶ 46} In the fourth and final assignment of error, L.S. claims that counsel was ineffective for failing to object to the failure to merge the kidnapping and rape counts.

{¶ 47} "A claim of ineffective assistance of counsel is judged using the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Sims*, 8th Dist. Cuyahoga No. 109335, 2021-Ohio-4009, ¶ 21, citing *State v. Bradley*, 42 Ohio St. 3d 136, 538 N.E.2d 373 (1989). "'Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.'" *Id.*, quoting *Bradley*, at paragraph two of the syllabus.

{¶ 48} The juvenile court stated on the record that the kidnapping was "referred" to the rape count for purposes of disposition. The juvenile court stated it more clearly in the corrected entry employing the term "merged." This court does not find that counsel was ineffective for failing to object.

{¶ 49} The fourth assignment of error is overruled.

## IV. Conclusion

{¶ 50} The juvenile court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., and
LISA B. FORBES, J., CONCUR